UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DASEAN LEGGETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 16-11027-JGD |
| NANCY A. BERRYHILL,[1] Acting Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED MEMORANDUM OF DECISION AND ORDER ON CROSS-MOTIONS REGARDING DENIAL OF SUPPLEMENTAL SECURITY INCOME BENEFITS

February 2, 2018
(nunc pro tunc December 1, 2017)

DEIN, U.S.M.J.

### I. INTRODUCTION

Plaintiff, Dasean Louis Leggett ("Leggett"), has brought this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), in order to challenge the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Leggett's claim for Supplemental Security Income ("SSI") benefits. The matter is presently before the court on the plaintiff's "Motion to Reverse" (Docket No. 22) by which Leggett is seeking an order reversing the Commissioner's decision and remanding the matter to the Social Security Administration for a new hearing. The matter is also before the

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill has been substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this action.

court on the defendant's "Motion for Order Affirming the Decision of the Commissioner" (Docket No. 27) by which the Commissioner is seeking an order upholding her decision that the plaintiff is not disabled and is therefore not entitled to SSI benefits. The principle issues raised by the parties' motions are whether the Administrative Law Judge's ("ALJ") determination of Leggett's residual functional capacity ("RFC") was based on substantial evidence regarding both his physical and mental impairments, and whether the Commissioner failed to provide evidence that there exists work in significant numbers in the national economy that Leggett can perform.

As described below, this court finds that the ALJ committed error when determining Leggett's RFC by failing to provide an adequate explanation for his rejection of an opinion of Dr. Fischer, a state agency non-examining consultant, that Leggett is limited to work in an "unpressured setting." This court also finds that the ALJ erred when determining Leggett's RFC by failing to consider a finding of disability made by the Commonwealth of Massachusetts. This court finds that the ALJ did not otherwise err in determining Leggett's RFC with respect to his hand impairment. However, the errors with regard to Dr. Fischer's opinion and the Commonwealth's disability finding warrant remand for further administrative proceedings.

This court also finds that the Commissioner failed to establish that there was work in significant numbers that Leggett can perform. The Vocational Expert ("VE") found that Leggett was qualified to do three types of jobs. Of these, two no longer exist and the third requires functions that obviously conflict with Leggett's RFC. The ALJ's failure to explain this conflict further requires that this matter be remanded. Accordingly, and for all the reasons detailed herein, the Commissioner's motion to affirm is DENIED and the plaintiff's motion to reverse is ALLOWED.

## II. **STATEMENT OF FACTS**[2]

Leggett was born on January 5, 1987, and was 25 years old at the time of the first hearing before the ALJ. (Tr. 27, 32). He completed ninth grade, and during his schooling attended special education classes. (Tr. 142, 603). His work history consists of some "under-the-table" jobs including landscaping and yard work. (Tr. 607). He lives with his girlfriend and her son. (Tr. 614-15). Leggett has three children who live with their mothers. (Tr. 601-02). Leggett claims that he has been disabled from working since June 22, 2010 due to a back disorder, a hand impairment, and depression. (Tr. 16).

### Procedural History

On June 23, 2010, Leggett filed an application for SSI, claiming that he had been unable to work since June 22, 2010 due to a back disorder, a hand impairment, and depression. (Tr. 14, 16). His applications were denied initially on September 14, 2010, and upon reconsideration on July 27, 2011. (Tr. 27-28, 32). Leggett then requested and was granted a hearing before an ALJ, which took place on August 29, 2012 in Boston, Massachusetts. (Tr. 32). The plaintiff, who was represented by counsel, appeared and testified at the hearing. (Id.). On September 19, 2012, the ALJ issued a decision denying Leggett's claims for benefits. (Tr. 32-40).

Subsequently, Leggett filed a request for review of the ALJ's decision by the Social Security Appeals Council. (Tr. 78-79). The Appeals Council granted Leggett's request for review, and on January 7, 2014 remanded the matter to the ALJ for further evaluation of the record. (Tr. 41-45). Following the remand, a hearing was held on December 2, 2014 before a

---

[2] References to pages in the transcript of the record proceedings shall be cited as "Tr. __." The ALJ's Decision shall be cited as "Dec." and can be found beginning at Tr. 14.

3

different ALJ. (Tr. 14). The plaintiff, who was represented by counsel, appeared and testified at the hearing. (Id.). The ALJ also obtained testimony from a VE who responded to hypothetical questions that were designed to determine whether jobs exist in the national and regional economies for an individual with the same age, educational background, work experience and RFC as the plaintiff. (Tr. 14, 596, 631-37).

On January 30, 2015, the ALJ issued a decision denying Leggett's claims for benefits. (Tr. 14-26). On March 17, 2015, Leggett appealed the decision to the Appeals Council, which denied review on April 4, 2016, thereby making the ALJ's decision the final decision of the Commissioner for purposes of review. (Tr. 6-10). Accordingly, the plaintiff has exhausted all of his administrative remedies and the case is ripe for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## The ALJ's Decision

The ALJ concluded that from June 23, 2010 through the date of his decision on January 30, 2015, Leggett "ha[d] not been under a disability, as defined in the Social Security Act," which defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (Dec. Finding #10; Tr. 14, 26). See also 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). There is no dispute that the ALJ, in reaching his decision that Leggett was not disabled, performed the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520 and 416.920. The procedure resulted in the following analysis, which

4

is further detailed in the ALJ's "Findings of Fact and Conclusions of Law." (See Dec. 3-13; Tr. 16-26).

The first inquiry in the five-step evaluation process is whether the claimant is "engaged in substantial gainful work activity[.]" Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). If so, the claimant is automatically considered not disabled and the application for benefits is denied. See id. In this case, the ALJ found that Leggett had not engaged in such activity since June 23, 2010, the application date for SSI benefits. (Dec. Finding #1; Tr. 16). Therefore, he proceeded to the second step in the sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is deemed not to be disabled and the application for benefits is denied. See Seavey, 276 F.3d at 5. Here, however, the ALJ determined that Leggett suffered from the severe impairments of back disorder, depression, and hand impairment/abscesses. (Dec. Finding #2; Tr. 16). Because he found that the plaintiff had an impairment that was severe, the ALJ's analysis continued.

The third inquiry is whether the claimant has an impairment equivalent to a specific list of impairments contained in Appendix 1 of the Social Security regulations, in which case the claimant would automatically be found disabled. See Seavey, 276 F.3d at 5; 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At this step, the ALJ concluded that the plaintiff's impairments, either alone or in combination, did not meet or medically equal any of the listed impairments. (Dec. Finding #3; Tr. 16-17). Consequently, he proceeded to step four.

5

The fourth inquiry asks whether "the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work[.]" Seavey, 276 F.3d at 5. Thus, in order to answer this inquiry, the ALJ must first make an assessment regarding the claimant's RFC. In the instant case, the ALJ assessed Leggett's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a)[3] except that the claimant has a basic ability to read and write in English, can understand posted signs and warnings, keep and maintain lists and sign-in sheets. He should not provide, interpret or receive written instructions. He has a basic ability to perform mathematical functions including taking money and making change. After every twenty to thirty minutes, the claimant needs the freedom to briefly stretch. The claimant is able to finger, grasp and manipulate. However, he is restricted to grasping to no more than one third out of an eight hour day. He should not be exposed to extreme hot and extreme cold temperatures. He should avoid climbing ladders. The claimant would not be able to perform complex tasks. He could perform one to four step repetitive tasks. He is able to work without supervision. He should not work in tandem with co-workers but is able to have casual contact and be in the same facility, same building and same room. He is able to deal with the public but could not decipher or provide written instructions. He is not able to have contact with the public where he would have to provide or receive information.

(Dec. Finding #4; Tr. 17-18 (footnote added)). Leggett challenges this finding as not based on substantial evidence.

In reaching his conclusion regarding the plaintiff's RFC, the ALJ first considered all of Leggett's symptoms and the extent to which those symptoms were consistent with the objective medical evidence and other evidence in the record. (Dec. Finding #4; Tr. 18).

---

[3] 20 CFR 416.967(a) defines "sedentary work" as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

Accordingly, the ALJ reviewed the plaintiff's medical records, which consisted of records covering the time period from July 2009 through April 2014. (See Dec. 6-11; Tr. 19-24). He also considered the available opinion evidence, as well as statements that Leggett had made at the hearing regarding his symptoms and the extent to which those symptoms interfered with his ability to carry out day-to-day activities. (Dec. 5-6; Tr. 18-19). Because the ALJ found that Leggett's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, he went on to determine whether Leggett's subjective statements about the limiting effects of his symptoms were credible in light of the entire record. (See Dec. 9-11; Tr. 22-24). The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Dec. 9; Tr. 22).

Leggett contends that the ALJ committed reversible error by failing to consider all the relevant medical opinion and testimony, particularly those of Dr. Fisher, a state agency non-examining psychologist, and a disability determination by the Commonwealth of Massachusetts. Leggett further challenges the portions of the RFC relating to his hand impairments as not supported by substantial evidence.

For the reasons described below, this court finds (1) that the ALJ's treatment of Dr. Fischer's opinion is insufficient and therefore the mental component of the RFC was not supported by substantial evidence; (2) the ALJ did not sufficiently consider the Commonwealth's disability determination; and (3) that otherwise, the physical components of the RFC related to Leggett's hand impairment are supported by substantial evidence.

7

After explaining the basis for his RFC determination, the ALJ found that Leggett did not have past relevant work, and thus "[t]ransferability of job skills [was] not an issue[.]" (Dec. Findings ##5, 8; Tr. 24, 25). See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) ("[a]t the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled"). Therefore, the ALJ continued to step five.

The fifth inquiry is whether, given the claimant's RFC, education, work experience and age, the claimant is capable of performing other work. See Seavey, 276 F.3d at 5; 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If so, the claimant is not disabled. Id. At step five, the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey, 276 F.3d at 5. Here, the ALJ relied on the VE's testimony to conclude that Leggett was capable of performing jobs that exist in significant numbers in the national economy, including the sedentary, unskilled occupations of a surveillance system monitor, a touch-up screener, and a tube operator. (Dec. Finding #9; Tr. 25). Therefore, the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy [and a] finding of 'not disabled' is therefore appropriate[.]" (Dec. 12-13; Tr. 25-26). Leggett challenges the ALJ's reliance on the VE's testimony.

The Commissioner acknowledges that the plaintiff could not perform the requirements of two of these positions, the "touch-up screener" and "tube operator." For the reasons detailed herein, this court also finds that the Commissioner did not meet her burden of proving that Leggett can perform the requirements of a surveillance system monitor. That position

8

requires the applicant to be able to follow written instructions and otherwise apply commonsense understanding to deal with developing problems, skills that conflict with Leggett's RFC.  See DOT 37.367-010, 1991 WL 673244.  For these reasons as well, this matter must be remanded for further proceedings.

Additional factual details relevant to this court's analysis are described below where appropriate.

### III.  ANALYSIS

#### A.  Standard of Review

By his complaint in this action, Leggett is seeking judicial review of the Commissioner's "final decision" pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act").  Section 205(g) of the Act provides in relevant part as follows:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ….  The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive ….

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

As the First Circuit has explained:

> In reviewing the record for substantial evidence, we are to keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." The [Commissioner] may (and, under [her] regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts. We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support [her] conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Therefore, "the court's function is a narrow one limited to determining whether there is substantial evidence to support the [Commissioner's] findings and whether the decision conformed to statutory requirements." Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981). The Commissioner's decision must be affirmed, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

"Even in the presence of substantial evidence, however, the Court may review conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" Musto v. Halter, 135 F. Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)) (internal citations omitted). "Thus, if the ALJ made a legal or factual error, the court may reverse or remand such decision to consider new, material evidence or to apply the correct legal standard." Ross v. Astrue, C.A. No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

### B.     Plaintiff's Challenge to the RFC Determination

In support of his motion to reverse the Commissioner's decision and remand, the plaintiff effectively challenges the manner in which the ALJ evaluated and weighed the available evidence in assessing his RFC. In particular, Leggett contends that the ALJ committed error by failing to address the opinion of Dr. Fischer, a state agency non-examining psychologist, that Leggett could carry out simple instructions but limited to an "unpressured setting." (See Pl. Mot. (Docket No. 22) at 3-4). Leggett also contends that the ALJ erred by failing to consider a determination by the Commonwealth of Massachusetts that Leggett was disabled for purposes of receiving Emergency Assistance to the Elderly, Disabled, and Children ("EAEDC") benefits. (See id. at 4). Finally, Leggett argues that the ALJ failed to adequately explain the basis for the RFC findings related to Leggett's hand impairment. (See id.). This court finds that the ALJ failed to adequately explain his treatment of Dr. Fischer's assessments and failed to address the EAEDC finding, and that these failures require a remand to the Commissioner for further proceedings. The court finds, however, that the RFC provisions related to Leggett's hand impairment are otherwise supported by substantial evidence.

### Dr. Fischer's Opinion

Leggett's first claim of error concerns the opinion of Dr. Fischer, a state agency non-examining psychologist. (See Dec. 11; Tr. 24, 330-47). On June 3, 2011, Dr. Fischer performed a Mental Residual Functional Capacity Assessment for Leggett. (Tr. 344-47). Among Dr. Fischer's conclusions in that assessment was that Leggett could "carry out simple instructions in a normal workday/workweek in an unpressured setting." (Tr. 346). Leggett argues that the ALJ failed to

11

address this conclusion, specifically as to the "unpressured setting" limitation, when determining Leggett's RFC. (See Pl. Mot. at 3-4).

The record demonstrates that in determining the RFC the ALJ did consider Dr. Fischer's expert opinion generally, giving it "some weight to the findings of no more than moderate limitations." (Dec. 11; Tr. 24). However, it is not clear whether the ALJ overlooked or rejected Dr. Fischer's requirement that Leggett work in an unpressured setting, and if he rejected that opinion, why he did so. For example, it appears that the ALJ adopted Dr. Fischer's recommendation that Leggett be limited to carrying out simple instructions, insofar as the RFC provides that Leggett "would not be able to perform complex tasks." (Dec. Finding #4; Tr. 18). However, the ALJ did not incorporate Dr. Fischer's "unpressured setting" limitation nor did the ALJ sufficiently explain why he chose not to do so.[4] The ambiguity is further compounded by the fact that nowhere in his opinion did the ALJ cite to the portion of the record containing Dr. Fischer's opinion that Leggett "can carry out simple instructions in a normal workday/workweek in an unpressured setting." (Tr. 344-47 (Exh. 10F)). In addressing Dr. Fischer's opinion, the ALJ cited to Exhibit 9F, the Psychiatric Review Technique, but did not cite to Exhibit 10F, the Mental Residual Functional Capacity Assessment containing Dr. Fischer's "unpressured setting" limitation. (See Dec. 11; Tr. 24). Therefore, it is unclear whether the ALJ considered Dr. Fischer's opinions contained in Exhibit 10F in arriving at Leggett's RFC.

The ALJ may have had reasons for accepting certain limitations while rejecting others. However he was required to "explain why he rejected some limitations contained in an RFC

---

[4] The omission is not insignificant given that the VE concluded that Leggett could work as a surveillance system monitor — a position that requires the monitor to respond quickly and notify law enforcement of crimes, disturbances or other disruptive activities.

12

assessment from a medical source while appearing to adopt other limitations contained in the assessment." Watkins v. Berryhill, No. 3:16-CV-30117-KAR, 2017 WL 4365158, at *11 (D. Mass. Sept. 29, 2017) (internal citation and quotation omitted). See SSR 96–8p, 1996 WL 374184, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); Id. ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."). While "an ALJ's written decision need not directly address every piece of evidence in the administrative record if it is cumulative of evidence already discussed by the ALJ or fails to support the claimant's position[,] . . . an ALJ may not simply ignore relevant evidence, especially when that evidence supports a claimant's cause." Dube v. Astrue, 781 F. Supp. 2d 27, 35 (D.N.H. 2011) (internal quotation and citation omitted). "Moreover, a court must be able to determine whether the ALJ considered the contrary evidence and chose to discredit it, or whether it was 'simply ignored.'" Id. (internal quotation and citation omitted).

The ALJ's assertion that he afforded Dr. Fischer's opinion "some weight" as to "the findings of no more than moderate limitations" does not adequately explain the basis for omitting any discussion of Dr. Fischer's "unpressured setting" limitation, and this court is not entitled to speculate as to the reasons for the ALJ's decision not to incorporate that limitation. His failure to offer an explanation constitutes error warranting remand. See Watkins, 2017 WL 4365158, at *11 (ALJ's decision remanded where ALJ determined plaintiff's RFC without sufficiently explaining his treatment of relevant evidence); Dube, 781 F. Supp. 2d at 34-36 (ALJ's

decision reversed for failure to discuss findings by state agency consultant that contradicted ALJ's conclusion); Crosby v. Heckler, 638 F. Supp. 383, 385-86 (D. Mass. 1985) ("The ALJ cannot reject evidence for no reason, or for the wrong reason, and must explain the basis for his findings. Failure to provide an adequate basis for the reviewing court to determine whether the administrative decision is based on substantial evidence requires a remand to the ALJ for further explanation.").

### EAEDC Disability Determination

Leggett next argues that the RFC is not supported by substantial evidence because the ALJ impermissibly failed to consider the EAEDC determination that Leggett was disabled.

An ALJ is "required to evaluate all the evidence in the case record that may have a bearing on [its] determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." SSR 06-03p, 2006 WL 2329939. However, a disability determination made by another governmental or nongovernmental agency is not binding on the SSA "[b]ecause the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner" and "because other agencies may apply different rules and standards than [the SSA] for determining whether an individual is disabled," which "may limit the relevance of a determination of disability made by another agency." See id.

While it appears that in determining Leggett's RFC the ALJ addressed some of the documentation submitted for the EAEDC disability review, specifically the opinions of Dr. Riley,

Dr. Kovalcik, and Dr. Tobierre, the ALJ failed to consider the EAEDC's disability determination itself, as well as a mental RFC completed by Dr. Kaufman as part of the EAEDC's disability determination process. (See Tr. 426-29). Given that the EAEDC determination of disability was time limited to January 21, 2013 (Tr. 418) and that the EAEDC relies on different standards for determining disability than SSA,[5] it is unclear whether the consideration of the EAEDC determination and the mental RFC completed by Dr. Kaufman would cause the ALJ to come to a different determination of Leggett's RFC. However, Leggett is entitled to have those pieces of evidence considered. See SSR 06-03p, 2006 WL 2329939. Therefore, remand is warranted to address the evidence regarding the EAEDC's disability determination.

## Hand Impairment

Leggett also claims that the physical components of the RFC relating to Leggett's hand impairment were otherwise not supported by substantial evidence. This court disagrees. With respect to the hand impairment, the RFC provides:

> The claimant is able to finger, grasp and manipulate. However, he is restricted to grasping to no more than one third out of an eight hour day. He should not be exposed to extreme hot and extreme cold temperatures. He should avoid climbing ladders.

(Dec. Finding #4; Tr. 18). This RFC is supported by substantial evidence relied on by the ALJ. Specifically, the ALJ found that Leggett reported that he shopped, did laundry, dusted, read the paper, used a tablet, used his smartphone daily to watch movies, access Facebook and play games, and could lift a gallon of milk. (Dec. 4-6; Tr. 17-19, 620-30). The ALJ also noted Leggett

---

[5] See Tolentino v. Astrue, C.A. No. 09-11093-RGS, 2010 WL 1633484, at *4 n.7 (D. Mass. Apr. 21, 2010) (noting that the EAEDC's disability standard "is less strict than that required for Social Security benefits because an applicant is not required to show that she is totally disabled") (citing 106 CMR 320.200(A) and 106 CMR 320.210)).

15

reported that the frequency with which Leggett's hand tightened up to the point where he could not make a fist or grasp was "a few times a month." (Dec. 6; Tr. 19, 629-30). Furthermore, the ALJ considered Leggett's physical examination findings from Dr. Stein (Dec. 10; Tr. 23, 487); Dr. Rosenbaum (Dec. 10; Tr. 23, 481-483), Zoe Simonton, PA-C (Dec. 10; Tr. 23, 498), and Dr. Metivier (Dec. 10; Tr. 23, 479-80), noting that they were largely normal. (Dec. 10; Tr. 23).

Finally, Leggett points to no evidence with respect to his hand impairment that the ALJ discounted or ignored. Therefore, this court finds that the physical components of the RFC relating to Leggett's hand impairment were supported by substantial evidence.

### C. Plaintiff's Challenge to the Step Five Analysis

Leggett also argues that remand is required because the VE's testimony, which the ALJ relied on in determining that there is work that exists in significant numbers in the national economy that he is capable of doing, was inconsistent with the Dictionary of Occupational Titles ("DOT"). For the reasons detailed above, a remand is necessary because the ALJ's RFC is not based on substantial evidence. In addition, the Commissioner has not met her burden of proving that Leggett is capable of doing work that exists in significant numbers in the economy, further warranting remand.

In response to a hypothetical posed by the ALJ at the administrative hearing, the VE testified that an individual with Leggett's age, education, work experience, and RFC would be able to perform the sedentary, unskilled jobs of surveillance system monitor, touch-up screener, and tube operator. (Tr. 635). However, it is readily apparent that those jobs are beyond Leggett's capabilities. As an initial matter, Leggett argues that the jobs of tube operator

16

and touch-up screener are obsolete and no longer exist in the economy.[6] While not conceding this point, the Commissioner acknowledges that Leggett cannot perform the requirements of these jobs and that they are not viable options for Leggett. (See Def. Br. (Docket No. 28) at 12). Thus, the jobs of touch-up screener and tube operator by definition require frequent handling/grasping, whereas the ALJ determined that Leggett is only capable of *limited* handling/grasping. See SSR-85-15, 1985 WL 56857, at *7 (equating grasping with handling); DOT 239.687-014 (tube operator), 1991 WL 672235; DOT 726.684-110 (touch-up screener), 1991 WL 679616. Moreover, with respect to the third job identified by the VE, that of surveillance system monitor, the Commissioner has not met her burden of proving that Leggett's mental impairments would not preclude him from performing that job.

The position of surveillance system monitor involves "level-three reasoning" (out of six levels)[7] and requires the individual to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "deal with problems involving several concrete variables in or from standardized situations." Auger v. Astrue, 792 F. Supp. 2d 92, 96 (D. Mass. 2011) (quoting DOT 379.367-010). While there is a split of authority as to whether an RFC limited to simple and unskilled work conflicts with a position requiring level-

---

[6] See Tillman v. Astrue, No. 1:08-CV-43-MP-GRJ, 2011 WL 3748816, at *9 (N.D. Fla. July 18, 2011) (VE admitted that the job of tube operator has become "obsolete" and should be excluded); Gary-Bailey v. Colvin, No. 3:14-CV-1535(WIG), 2016 WL 1323106, at *4 n.5 (D. Conn. Jan. 13, 2016) ("The Court does indeed wonder where one might find a position as a tube operator ... in 21st century Connecticut."); Henry v. Colvin, 12-CV-6822(ABF), 2015 WL 9238959, at 7 n.7 (S.D.N.Y. Dec. 17, 2015) ("The Court is concerned about the fact that the Dictionary of Occupational Titles was last published twenty-five years ago ... and about the actual availability of some of the proposed jobs, given, for example, that the pneumatic tube mail system in New York City became obsolete over half a century ago.") (internal citation omitted)).

[7] "[T]he DOT classifies each occupation according to a six-level system based on general education development ("GED") in mathematics, literacy, and reasoning, with six being the most advanced and one being the least advanced." Auger v. Astrue, 792 F. Supp. 2d 92, 96 (D. Mass. 2011).

three reasoning, in the instant case there are more direct conflicts between Leggett's RFC and the position of surveillance system monitor.  Id., and cases cited.  For example, in addition to the level three reasoning described above, the position requires level three language skills which include the ability to read "a variety of novels, magazines, atlases and encyclopedias" as well as "safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work."  DOT 379.367-010, 1991 WL 673244.  In addition, the position requires the ability to "[w]rite reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech."  Id.  It also requires the ability to "[s]peak before an audience with poise, voice control, and confidence, using correct English and a well-modulated voice."  Id.  According to the ALJ, however, Leggett has only "a basic ability to read and write in English."  (Dec. Finding #4; Tr. 17).  Moreover, the ALJ made the affirmative finding that Leggett should "not provide, interpret or receive written instruct-tions" and is not able to "decipher or provide written instructions."  (Dec. Finding #4; Tr. 17-18).  Moreover, "[h]e should not work in tandem with co-workers but is able to have casual contact and be in the same facility, same building, and same room."  (Dec. Finding #4; Tr. 18).  All of these conflict with the requirements of the position.

Perhaps most striking, but without limitation, the ALJ concluded that Leggett "is not able to have contact with the public where he would have to provide or receive information."  (Id.).  The basic responsibility of a surveillance system monitor is to be able to convey to authorities the "need for corrective action" when the monitor observes "crimes or disturbances," as well as to follow instructions when an "incident is developing."  (DOT 379.367-010).  The ALJ's failure to explain the conflict between Leggett's RFC and the responsibilities of the one existing job

18

that the VE identified requires that this matter be remanded.[8]  See Auger v. Astrue, 792 F. Supp. 2d at 98 (where conflict is obvious, ALJ must address it before rendering a decision).  See also Le v. Colvin, Civil Action No. 3:15-cv-30157-KAR, 2016 WL 7104835, at *8 (D. Mass. Dec. 5, 2016) (ALJ must inquire about and explain apparent conflicts between VE's testimony and the DOT).  See also SSR 00–04p, 2000 WL 1898704, at *4 ("when vocational evidence provided by a [vocational expert] is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the [vocational expert] evidence to support a determination or decision that the individual is or is not disabled."); Wilson v. Astrue, C.A. No. 08-40228-FDS, 2010 WL 1379889, at *9 (D. Mass. Mar. 30, 2010).

Although the ALJ in the instant matter wrote in his decision that he had determined, pursuant to SSR 00-4p, "that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles," this conclusory statement is insufficient.  An ALJ's mere statement that "pursuant to SSR 00–4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles" is not sufficient to satisfy SSR 00–4p where an apparent conflict exists.  See Aho v. Comm'r of Soc. Sec. Admin., No. CIV.A. 10-40052-FDS, 2011 WL 3511518, at *14 (D. Mass. Aug. 10, 2011).  It is apparent that if the touch-up screener job and the tube operator job existed, they would be beyond the scope of Leggett's capabilities.  Similarly, Leggett's skills do not match the requirements of a surveillance system monitor.  For these reasons as well, the matter will be remanded.

---

[8] In light of this conclusion, this court will not address Leggett's argument that there is an insufficient number of these positions in the economy.

## IV. **CONCLUSION**

For all the reasons described above, the defendant's "Motion for Order Affirming the Decision of the Commissioner" (Docket No. 27) is DENIED, and the plaintiff's "Motion to Reverse" (Docket No. 22) is ALLOWED. The matter shall be remanded for further administrative proceedings consistent with this decision.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge